**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Susan Patrick, | No. CV-21-00631-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Kimberly Susan Patrick's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 21, "Def.'s Br."), and Plaintiff's Reply Brief (Doc. 22, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 14, "R.") and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 12–26) as upheld by the Appeals Council (R. at 1–3) and remands for further proceedings.

**I.    BACKGROUND**

Plaintiff filed the instant application for Title II Social Security Disability Insurance Benefits ("SSDI") on February 16, 2018, for a period of disability beginning May 16, 2018. (R. at 15.) Plaintiff's last date insured for purposes of Title II benefits was December 31, 2019. (R. at 18.) Plaintiff's claim was denied initially on May 4, 2018 and was denied again

upon reconsideration on October 30, 2018. (R. at 15.) Plaintiff had previously filed an application for SSDI on December 8, 2014, which was denied by an ALJ on August 23, 2017. (R. at 90–93.)

For the instant application, Plaintiff testified telephonically before the ALJ on May 19, 2020. (R. at 41–57.) Upon consideration of the medical records, opinions, and testimony presented, the ALJ found Plaintiff not disabled in a decision dated August 19, 2020. (R. at 12–26.) Prior to explaining her findings, the ALJ stated that Plaintiff did not present any new and material evidence regarding her conditions to support a departure from the prior ALJ's 2017 determination. (R. at 16.) The ALJ then found that Plaintiff had the following severe impairments: osteoarthritis of the right foot and ankle status post total ankle arthroplasty, fibromyalgia, rheumatoid arthritis, chronic obstructive pulmonary disease (COPD), social phobia, agoraphobia with panic disorder, and major depressive disorder. (R. at 18.) The ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC") and found that although Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23.) The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that

> [she] can only sit for about 6 hours out of an 8-hour day and stand and/or walk about 4 hours out of an 8-hour day; occasionally operate foot controls with her right lower extremity; occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds; frequently balance, stoop, crouch and kneel, occasionally crawl; occasional exposure to non-weather related extreme temps and humidity, pulmonary irritants, like chemicals, odors, dusts, fumes, and gases; avoid hazards, including moving machinery and unprotected heights; occasional interaction with coworkers and supervisors but can work in vicinity of others.

(R. at 20.)

On February 22, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (R. at 1–3.) Plaintiff filed this action on April 13, 2021. (Doc. 1.)

## II. LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she

determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration, submitting that the ALJ erred by (1) adopting the previous ALJ's determination of Plaintiff's mental capacities; (2) rejecting the medical opinions of Plaintiff's treating rheumatologist, Ravi Bhalla, M.D. ("Dr. Bhalla"); and (3) rejecting Plaintiff's symptom testimony. (Pl. Br. at 1-2.) In her Response Brief, Defendant argues that any error made by the ALJ in adopting the previous ALJ's disability determination was harmless and that the ALJ's rejection of Dr. Bhalla's opinions and Plaintiff's testimony was proper and supported by substantial evidence. (Def. Br. at 3, 6, 10.) In Plaintiff's Reply Brief, she again asserts each of her three arguments and maintains that the ALJ committed materially harmful error. (Reply at 3.) Plaintiff requests the case be remanded for award of benefits under the "credit-as-true" doctrine, or in the alternative, for a de novo hearing and new decision. (Pl. Br. at 25.) The Court considers Plaintiff's three arguments, in turn.

### A. The ALJ Did Not Commit Reversible Error in Adopting the Previous ALJ's Determination of Plaintiff's Mental Capacities.

Plaintiff argues that the ALJ erred by adopting the previous ALJ's determination of her mental capacities. (Pl. Br. at 13–15.) "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). "The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)); *see* SSAR 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997).

Plaintiff previously filed for disability in 2014 and the prior ALJ found that Plaintiff was not disabled in a decision dated August 23, 2017. (R. 90–107.) On the current

application, the ALJ applied *Chavez* and SSAR 97-4(9) and stated, "[t]he claimant did not meet her burden to show there was new and material evidence that supports deviating from the prior ALJ decision." (R. at 16.) The ALJ reasoned that Plaintiff "had no new impairments, received similar treatment and had similar exam findings as was present in the prior decision." (R. at 16.) Plaintiff argues this was error because Plaintiff had new impairments, increased severity of past impairments, and had received different treatment since the previous ALJ's determination. (Pl. Br. at 14–15.)

Defendant concedes that the ALJ misstated that Plaintiff did not show any changed circumstances. (Def. Br. at 4.) However, Defendant advances that the misstatement of Plaintiff's condition was harmless error since the ALJ nonetheless accounted for Plaintiff's new impairments and the increased severity of past impairments in her decision, which considered all of the evidence Plaintiff presented. (*Id*.)

The Ninth Circuit has long recognized that harmless error principles apply to Social Security cases. *Molina v. Astrue*, 674 F. 3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id*. (citations omitted). Thus, the Court must look at the entire record to determine whether an error altered the outcome of the case. *Id*.

The ALJ committed error by incorrectly stating that Plaintiff had no new impairments and had not experienced any "changed circumstances" warranting a deviation from the previous ALJ's 2017 determination. As Plaintiff notes, the ALJ did in fact find new impairments and increased severity of Plaintiff's impairments that the prior ALJ did not discuss. (*Compare* R. at 18 (finding that Plaintiff's social phobia, agoraphobia with panic disorder, and major depressive disorder are severe impairments), *with* R. at 95 (finding that Plaintiff's only severe psychological impairment was an anxiety disorder).) However, the error was harmless because the ALJ considered the increase in severity of Plaintiff's past impairments and Plaintiff's new impairments throughout her subsequent analysis. For example, when determining Plaintiff's RFC, the ALJ accounted for Plaintiff's social phobia and agoraphobia. (R. at 20.) When considering these impairments, the ALJ

found that Plaintiff had a moderate limitation in her ability to adapt and manage herself. (R. at 20.) In contrast, the previous ALJ's RFC determination only accounted for "an anxiety disorder," (R. at 95), and found that Plaintiff had a mild limitation in her ability to adapt and manage herself. (R. at 97.) Since the ALJ did not fail to account for Plaintiff's new impairments and the increased severity of past impairments in her disability determination, the misstatement that Plaintiff had no new impairments and received similar treatment was harmless. But that is not the end of the analysis. Even if Plaintiff rebuts the presumption of nondisability, the previous ALJ's findings regarding Plaintiff's RFC, education, and work experience should not be disturbed absent a showing of new and material evidence that implicates those findings. *See Baca v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00608-PHX-DWL, 2021 WL 1827232, at *2 (D. Ariz. May 7, 2021) (citing *Chavez*, 844 F.2d at 694). Whether the ALJ erred in adopting the RFC of the previous ALJ turns on Plaintiff's remaining arguments, which the Court now considers.

**B.     The ALJ Erred By Improperly Rejecting Dr. Bhalla's Medical Opinions.**

Plaintiff argues that the ALJ erred by rejecting the medical opinions of Plaintiff's treating rheumatologist, Dr. Bhalla. (Pl. Br. at 16–21.) In her Opening Brief, Plaintiff cites both the revised federal regulations for evaluating persuasiveness of physicians' testimony, 20 C.F.R. § 404.1520c, and the Ninth Circuit's specific-and-legitimate-reasons standard in *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017), for evaluating examining physicians' opinions. (*Id.* at 16–17.) However, in Plaintiff's Reply Brief, Plaintiff concedes that the Ninth Circuit's decision in *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022), which was decided after Plaintiff's Opening Brief was filed, held that its prior case law is inconsistent with, and superseded by, the Social Security Administration's revised regulations, which the Court must now apply. (Reply at 5.)

When addressing the inconsistency between the revised federal regulations and its prior precedent evaluating the weight of treating or examining physicians' opinions, the Ninth Circuit explained that the current regulations no longer favor deference to treating or examining physician evidence. *Woods*, 32 F.4th at 791. Instead, the revised regulations

indicate that "the most important factors" considered by an agency when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." *Id.* (quoting 20 C.F.R. § 404.1520c(a)). The Ninth Circuit explained:

> [U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, id. § 404.152c(b)(2).

*Id.* at 792.

Other Ninth Circuit case law regarding the evaluation of examining physician evidence remains good law. For instance, "[a]n ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms.'" *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). Relevant here, when "evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels*, 874 F.3d at 662.

In the instant case, the ALJ found Dr. Bhalla's medical opinions to be unpersuasive. (R. at 24.) Nonetheless, the ALJ concedes in her determination that Dr. Bhalla's "opinions were well supported by citations to objective findings from his examination of the claimant." (R. at 24.) Her rejection of Dr. Bhalla's opinions therefore hinges on the consistency factor: "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,' [c]onsistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(1)–(2)).

The ALJ stated that Dr. Bhalla's opinions about Plaintiff's limitations were "wholly inconsistent with the totality of the medical evidence." (R. at 25.) The ALJ reasoned, "the extreme sitting, standing and walking limitations are inconsistent with exams that showed the claimant walked with a normal gait." (R. at 25 (citing B11F/15, 20, 28, 35, 41; B19F/14).) The ALJ continued, "[h]is opinion the claimant can perform no postural or manipulative activities are [sic] inconsistent with exams showing the claimant often had full muscle strength, normal range of motion and no widespread joint swelling." (R. at 25 (citing B2F/4; B3F/10, 26, 32, 39; B4F/7, 12, 16; B11F/15, 20, 28, 35, 41; B17F/6; B19F/14; B23F/15: B25F/4).) The ALJ then concluded, "[Dr. Bhalla's] limitations are also inconsistent with blood tests showing the claimant's sedimentation and C-reactive protein levels were often within normal range, indicating the absence of inflammation." (R. at 25 (citing B1F/6, 8–14; B9F/3, 7; B13F/2, 4–9; B23F/7, 9–12).)

The ALJ did not support her persuasiveness findings with respect to Dr. Bhalla with substantial evidence. First, the ALJ did not explain how normal gait is correlated with the sitting, standing and walking limitations articulated by Dr. Bhalla. It is unclear from the record whether or how walking gait is a relevant assessment criterion for diagnosing, treating, or assessing the severity of Plaintiff's impairments. Since the ALJ did not discuss the relevance and significance of Plaintiff's normal gait in relation to Plaintiff's impairments, it is unclear from the ALJ's determination why a normal gait forecloses the limitations articulated by Dr. Bhalla. *See Maske v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04861-PHX-DWL, 2020 WL 8137687, at *5 (D. Ariz. Feb. 19, 2020) (finding reversible error where "the ALJ failed to build a logical bridge between the evidence and her conclusion").

Second, the ALJ did not explain how certain findings of full muscle strength, normal range of motion, and lack of widespread joint swelling during some examinations were wholly inconsistent with Dr. Bhalla's opinion that Plaintiff cannot perform postural or manipulative activities. The ALJ cites to certain assessments of Plaintiff's musculoskeletal condition to demonstrate findings of full muscle strength, normal range of motion, and lack

of widespread swelling; however, many of these assessments appear to only assess one or two factors considered by the ALJ. (*See* R. at 25 and citations therein; *see, e.g.*, R. at 474 (assessing only Plaintiff's range of motion).) In Dr. Bhalla's medical assessment, he stated that Plaintiff experiences "good" and "bad" days when documenting Plaintiff's fibromyalgia symptoms (R. at 700), which could be consistent—or at least partially consistent—with findings of full muscle strength, normal range of motion, and lack of widespread swelling on certain occasions. *See Revels*, 874 F.3d at 657 (quoting SSR 12-2P, 2012 WL 3104869, at *6 (July 25, 2012)) ("Further, SSR 12-2P recognizes that the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days'"). The ALJ did not explain why certain normal findings of Plaintiff's musculoskeletal condition were necessarily reflective of Plaintiff's overall condition, rather than Plaintiff's "good days." *See Attmore*, 827 F.3d at 877 (quoting *Garrison*, 759 F.3d at 1017) (holding that an ALJ must interpret the record "with an understanding of the patient's overall well-being and the nature of her symptoms"). For these reasons, the ALJ did not establish that she relied on substantial evidence when concluding that Dr. Bhalla's opinion that Plaintiff cannot perform postural or manipulative activities was wholly inconsistent with the medical record.

Third, the ALJ apparently relied on her own interpretation of Plaintiff's blood work when assessing the persuasiveness of Dr. Bhalla's assessments. When rejecting Dr. Bhalla's opinions, the ALJ reasoned that his opinions were inconsistent with Plaintiff's bloodwork, specifically her sedimentation and C-reactive protein levels, which the ALJ found to indicate an absence of inflammation. (R. at 25 (citing B1F/6, 8–14; B9F/3, 7; B13F/2, 4–9; B23F/7, 9–12).) The ALJ exceeded her authority when interpreting Plaintiff's blood tests. An ALJ cannot substitute his or her own judgement for that of a doctor. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017). Although Defendant is correct in that the ALJ is responsible for resolving conflicts in the medical evidence (Def. Br. at 9), "ALJs cannot usurp the role of doctors when interpreting the medical evidence, particularly highly technical medical evidence." *Leusch v. Berryhill*, 358 F. Supp.3d 896, 906 (D. Ariz. 2019).

Here, rather than citing to a doctor's analysis of the blood work, the ALJ apparently analyzed the results herself. Since the medical relevance and significance of this blood test is unclear, the ALJ exceeded her purview in concluding that Plaintiff's normal sedimentation and C-reactive levels contradicted Dr. Bhalla's opinion that Plaintiff had severe limitations precluding her from work.

The same issues discussed above undermine the ALJ's analysis of the non-examining physicians' opinions. The ALJ found the state-agency-medical consultants, Dr. Nadine Keer and Dr. Yosef Schwartz, (collectively, the "non-examining physicians"), to be persuasive. (R. at 24.) The ALJ reasoned that the non-examining physicians' opinions were persuasive for the same reasons she found Dr. Bhalla's opinion unpersuasive. The ALJ pointed to certain findings of normal gait, full muscle strength, lack of widespread joint pain (R. at 24 (citing B2F/4; B3F/10, 26, 32, 39; B4F/7, 12, 16; B11F/15, 20, 28, 35, 41; B17F/6; B19F/14; B23F/15; B25F/4)), and normal sedimentation and C-reactive protein levels (R. at 25 (citing 8 B1F/6, 8–14; B9F/3, 7; B13F/2, 4–9; B23F/7, 9–12).) As stated previously, the ALJ did not properly explain the connection between the objective medical evidence and her persuasiveness conclusions for either Dr. Bhalla or the non-examining physicians. Additionally, the non-examining physician reports are dated October 2018, and they therefore necessarily did not consider medical evidence post-dating their reports concerning Plaintiff's impairments. (R. at 150–155; *see* Pl. Br. at 20.) In short, the Court finds that substantial evidence does not support the ALJ's explanation of why she found Dr. Bhalla's opinion unpersuasive.

**C.  The ALJ Erred By Improperly Rejecting Plaintiff's Symptom Testimony.**

In evaluating a claimant's pain and symptom testimony, the ALJ must engage in a two-step analysis. First, she must determine whether the claimant has produced objective medical evidence of an underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain and symptom testimony

associated with the underlying impairment. *Id.* Here, because the ALJ found underlying impairments of osteoarthritis, fibromyalgia, rheumatoid arthritis, chronic obstructive pulmonary disease, social phobia, agoraphobia with panic disorder, and major depressive disorder (R. at 18) and cited no evidence of malingering when evaluating Plaintiff's claims (R. at 23), the ALJ had to provide specific, clear, and convincing reasons in order to reject Plaintiff's pain and symptom testimony.

"An ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Moreover, if the ALJ explains her decision with "less than ideal clarity," a reviewing court will not upset the decision on that account if "[her] path may reasonably be discerned." *Id.* (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)). The ALJ may consider "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff argues that the ALJ did not provide specific, clear, and convincing reasons for rejecting her symptom testimony, resulting in legal error. (Pl. Br. at 21.) Plaintiff also argues that the ALJ committed error by failing to show that the medical record was inconsistent with Plaintiff's testimony. (*Id.* at 22.) Plaintiff further asserts that the ALJ

improperly relied on objective evidence of Plaintiff's "good days" to reject Plaintiff's testimony of her condition as a whole, despite a lack of necessary inconsistency between the two. (*Id*. at 23).

When rejecting Plaintiff's symptom testimony, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 23.) However, the ALJ determined that "[Plaintiff's] statements concerning intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (R. at 23.) Specifically, the ALJ stated "[w]hile the evidence does support work related limitations, it is not fully consistent with a findings [sic] of disability." (R. at 23.)

The ALJ rejected Plaintiff's symptom testimony on many of the same bases upon which she found Dr. Bhalla's opinions unpersuasive. Again, the ALJ failed to support her conclusion that Plaintiff's normal gait, lack of swelling and tenderness, full range of motion, muscle strength, and blood work precluded a finding that Plaintiff suffered from the limitations she described in her testimony. The ALJ merely states Plaintiff's testimony of severe pain, stiffness, swelling, and mobility difficulties is inconsistent with the medical evidence and cited certain medical examination findings. (R. at 23 (citing, e.g., B11F/15, 20, 28, 35, 41) (documenting Plaintiff's normal gate).) However, the ALJ did not apparently factor into her analysis Dr. Bhalla's and Plaintiff's reports of good and bad days, which appear to be consistent with Plaintiff presenting with tenderness and swelling on some occasions and normal findings on others.

As previously stated, the ALJ's reliance on Plaintiff's normal gait and bloodwork is insufficient to support her conclusion that the medical evidence contradicts Plaintiff's testimony. Again, it is unclear whether or how gait is an appropriate assessment criterion for any of Plaintiff's conditions or if Plaintiff's C-reactive protein foreclose the possibility that she has severe limitations preventing her from working. The Court finds that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

## IV. CONCLUSION

Having found that the ALJ committed reversible error, the Court must determine the appropriate remedy. Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 25.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues to be resolved before a determination of disability can be made, and further administrative proceedings must not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Id.* (citations and quotations omitted). Thus, even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020.

In this case, the Court cannot conclusively determine from the record that Plaintiff is disabled and finds that remand for further proceedings is appropriate. On remand, the Social Security Administration may choose to further develop the record to address some of the shortcomings of the ALJ's determination, such as the relevance and significance of Plaintiff's gait, Plaintiff's sedimentation and C-reactive protein levels, and the medical evidence in light of Plaintiff's good and bad days. Further proceedings also would be useful to reassess the weight assigned to the medical opinion evidence. Similarly, if the ALJ is to reject Plaintiff's testimony, the ALJ must articulate specific, clear, and convincing reasons. *See Dodril v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

**IT IS THEREFORE ORDERED** reversing the August 19, 2020 decision of the Administrative Law Judge (R. at 15–26), as upheld by the Appeals Counsel on February 22, 2021. (R. at 1–6.)

**IT IS FUTHER ORDERED** remanding this matter for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 23rd day of February, 2023.

Honorable John J. Tuchi
United States District Judge